UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STEVEN DOUGLAS SHERMAN,
    Plaintiff,

vs.                                                        Case No.: 3:21cv537/MCR/EMT

A. BURLESON, et al.,
    Defendants.
_____/

# REPORT AND RECOMMENDATION

Plaintiff, proceeding pro se and in forma pauperis, was an inmate of the Florida Department of Corrections (FDOC) when he commenced this civil rights lawsuit in March 2021 (*see* ECF No. 1). He was released from the FDOC in August 2021 (*see* ECF No. 12). Presently before the court is Plaintiff's Fourth Amended Complaint (ECF No. 19), the operative pleading.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). After careful consideration of the issues presented by Plaintiff, it is the opinion of the undersigned that Plaintiff's claims against three Defendants should be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.   BACKGROUND

This lawsuit concerns events that occurred at Walton Correctional Institution (*see* ECF No. 19 at 7–12).  Plaintiff names eleven Defendants:  (1) Officer A. Burleson; (2) Officer J.D. Holland; (3) Officer Pulley; (4) Assistant Warden of Programs A. Ralph; (5) Centurion of Florida, LLC, a private entity under contract with the FDOC to provide medical care to inmates; (6) Licensed Practical Nurse (LPN) Castro; (7) LPN Pybus; (8) Health Services Administrator (HSA) B. Bottoms; (9) HSA K. Rice; (10) HSA Amy Scott; and (11) Centurion's Regional Medical Director Dr. E. Hernandez-Perez (*id.* at 1–4).  Plaintiff sues Defendants in their individual and official capacities (*id.* at 12).

The following facts are taken from Plaintiff's Fourth Amended Complaint (ECF No. 19 at 7–12).  On October 12, 2020, Plaintiff was placed in a holding cell awaiting a cell assignment (*id.* at 7).  An unidentified inmate in the neighboring holding cell exposed himself to a female officer and refused to obey the officer's orders to pull up his pants (*id.*).

Moments later, Defendant Officer Holland approached Plaintiff's holding cell to move him to his new cell, while Defendant Officer Burleson approached the unidentified inmate's cell to move him as well (ECF No. 19 at 7).  Plaintiff told Officer Holland, "I'm not going in the cell with this inmate." (*id.*).  Officer Holland

directed Plaintiff to submit to handcuffs (*id.*). As Officer Holland was cuffing Plaintiff, Plaintiff repeated that he was not going into the cell with the other inmate (*id.* at 7–8). Officer Holland grabbed Plaintiff's right ring finger and pinkie finger and pulled them back so forcefully that Plaintiff's ring finger (fourth metacarpal) broke (*id.* at 8). When Plaintiff, Officer Holland, Officer Burleson, and the unidentified inmate reached the new housing unit, Plaintiff again stated he refused to be housed with the other inmate and explained that the inmate had exposed himself to a female officer (*id.*). Plaintiff also told Officer Burleson and Officer Holland that his hand was injured, and he was in a lot of pain (*id.*). After two to three minutes of discussion, Officer Burleson returned Plaintiff to the holding cell to await a new cell assignment (*id.*). While Burleson was uncuffing Plaintiff's hands through the cell door's slot/portal, Burleson deliberately pulled back Plaintiff's right ring finger and pinkie finger and then yanked the handcuff upward causing Plaintiff's arm to forcefully hit the door's slot/portal (*id.*). Also, Plaintiff left big toe hit the cell door and floor, to the extent that the toenail fell off months later (*id.*). Plaintiff reported his injuries to Officers Burleson and Holland during the escort to his new cell assignment, but neither officer reported the injuries or facilitated medical treatment (*id.*).

The next day, October 13, 2020, Plaintiff submitted a sick call request to Defendants LPN Castro and Officer Pulley, as LPN Castro was distributing medication in the housing unit and Officer Pulley was escorting Castro (ECF No. 19 at 8).  Plaintiff told LPN Castro and Officer Pulley his hand was fractured and he required emergency medical treatment (*id.*).  Plaintiff did not receive medical attention (*id.*).

Nine days later, on October 22, 2020, Plaintiff submitted a second sick call request to LPN Castro and Officer Pulley during Castro's medication rounds (ECF No. 19 at 8).  Again, Plaintiff did not receive medical attention (*id.*).  Plaintiff believes that LPN Castro and Officer Pulley either discarded his first two sick call requests or otherwise failed to process them (*id.* at 9).

The same day Plaintiff submitted his second sick call request (October 22), he also filed an informal grievance (ECF No. 19 at 9, 26 (informal grievance)).  Plaintiff complained he had submitted a sick call request to LPN Castro on October 13, but he had not been seen by medical for "my hand injury and my toe nail that is falling off" (*id.*).  Plaintiff stated he was in "a lot of pain" and complained that he requested ibuprofen from dorm officers, but they refused to provide it (*id.*).  Defendant HSA Rice responded to the grievance the next day (October 23) stating, "You were unable

Case No.:  3:21cv537/MCR/EMT

to be seen due to security lockdown.  You were instructed to resubmit sick call." (*id.*).

The same day that HSA Rice responded to Plaintiff's informal grievance (October 23), Plaintiff declared a medical emergency seeking medical attention for his very swollen and painful hand (ECF No. 19 at 9).  A nurse came to Plaintiff's cell, gave him "12 Ibuprofen," and told him someone would see him soon (*id.*).

On November 3, 2020, Plaintiff filed a second informal grievance complaining his hand was very painful, he was unable to properly move his fourth finger, and he believed that his finger or hand was fractured (ECF No. 19 at 9, 11, 25 (informal grievance)).  Plaintiff complained he had submitted sick call requests to LPN Castro on October 13 and 22, but was not seen by medical until he declared a medical emergency on October 23 (*id.*).  Plaintiff stated he was provided ibuprofen on October 23, but he wished to be seen by a specialist or receive an x-ray (*id.*).  The same day (November 3), Plaintiff also submitted a third sick call request to LPN Castro and Officer Pulley (*id.* at 9–10).  On November 5, 2020, Defendant HSA Bottoms responded to Plaintiff's second informal grievance, instructing him to submit a sick call request if he was experiencing worsening symptoms (*id.* at 9, 25 (informal grievance)).

In response to Plaintiff's third sick call request, Defendant LPN Pybus came to Plaintiff's cell on November 11, 2020 (ECF No. 19 at 9, 31). Plaintiff's right hand was swollen, bruised, and "yellowing" (*id.* at 10). Plaintiff also complained about his injured toe (*id.*). LPN Pybus refused to examine Plaintiff's toe and refused to x-ray Plaintiff's hand or refer him to a clinician for diagnosis and treatment (*id.*).

Plaintiff did not submit anymore sick call requests, but he continued to file grievances. On November 19, 2020, Plaintiff filed a formal grievance with the warden, complaining he had not received medical treatment for his injured and possibly fractured hand or his "pulled back" toe nail (ECF No. 19 at 9, 22 (formal grievance number 2011-108-105)). Plaintiff complained he could not move his right ring finger and was still in a lot of pain (*id.*). Plaintiff complained he submitted sick call requests on October 13, October 22, and November 3, and declared a medical emergency on October 23, 2020 (*id.*). Plaintiff requested examination of his right hand and left big toe by a doctor and an x-ray of his right hand (*id.*).

Defendant Regional Medical Director Dr. Hernandez-Perez responded to the formal grievance on December 2, 2020, stating there was no record of sick call requests in Plaintiff's medical chart, and sick call was the proper procedure for receiving a medical assessment to determine if further treatment, diagnostic testing, or lab work was needed (*id.* at 24 (response to formal grievance)). Defendant

Assistant Warden of Programs Ralph also signed the grievance response as the reviewing authority, thus finalizing Dr. Hernandez-Perez's response (*see id.*).

Plaintiff filed a third informal grievance on December 5, 2020 (ECF No. 19 at 10, 32 (informal grievance)). Plaintiff complained he was still waiting to see a doctor or an Advanced Registered Nurse Practitioner (ARNP) about his hand (*id.*). He stated he believed that his hand was fractured, because he could not move it properly and it was still very painful (*id.*). Plaintiff stated it had been two months since the injury, and he had not received any treatment for his hand (*id.*). Defendant HSA Scott responded to the grievance on December 11, 2020 (*see id.*). HSA Scott told Plaintiff that his medical chart indicated he was seen twice for his concerns about his finger, and the nurse did not believe that a referral to a doctor was clinically indicated (*id.*). HSA Scott reminded Plaintiff that he was instructed to "follow up with sick call" if his symptoms did not resolve or worsened, and Scott instructed Plaintiff to utilize that process (*id.*).

On December 21, 2020, Plaintiff filed another formal grievance with the warden, complaining he had not received medical attention or treatment by a doctor for his fractured hand and toe nail (ECF No. 19 at 10, 31 (formal grievance number 2012-108-080)). Plaintiff complained medical staff was ignoring his injuries (*id.*). Plaintiff complained his hand was swollen, bruising, and yellowing when LPN

Pybus came to his cell (on November 11, 2020), yet he was not referred for an x-ray or examination by a doctor or an ARNP (*id.*). Plaintiff complained he could not move his finger properly and was experiencing chronic pain and cramping (*id.*).

Defendant Regional Medical Director Dr. Hernandez-Perez responded to the grievance on January 4, 2021, stating as follows:

> Record review shows that your last sick call request for your grieved issue was on 11/11/20. You were advised at that time to get ibuprofen or Tylenol from the dorm officers if needed and to follow up with sick call if your symptoms worsen or do not improve. There was no clinical indication of a need to refer you to the provider. If you need to be seen in medical you will need to follow policy and put in a sick call request.

(ECF No. 19 at 30 (response to formal grievance)). Defendant Assistant Warden of Programs Ralph also signed the grievance response as the reviewing authority, thus finalizing Dr. Hernandez-Perez's response (*see id.*).

Plaintiff appealed the denial of his formal grievances to the FDOC's Central Office (*see* ECF No. 19 at 21, 23, 28, 29 (Central Office appeals and responses)). The response to Plaintiff's first appeal was dated February 15, 2021, and stated:

> It is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing.
>
> Records reviewed indicate that you were seen by medical on 11/11/2020, where you could address your medical concerns at that time. To date, you have not accessed sick call to have your medical issues addressed.

Case No.: 3:21cv537/MCR/EMT

> In accordance with Policy[,] inmates who present to sick call three (3) times with the same complaint as unresolved will be referred to a clinician but may be referred prior to that as determined by the assessor.
>
> Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

(ECF No. 19 at 21 (response to Central Office appeal No. 21-6-00065)).

Plaintiff was transferred from Walton C.I. to the Walton Work Camp and submitted a sick call request to address his eczema and psoriasis (ECF No. 19 at 10). He was "finally" seen by Dr. K. Forrester (*id.*). Plaintiff complained about his right hand and ring finger, and Dr. Forrester referred Plaintiff for an x-ray (*id.*). Plaintiff received the x-ray on February 11, 2021 (*id.* at 10, 19 (radiology report)). According to the radiology report, Plaintiff had an acute fracture involving the fourth finger of his right hand with associated soft tissue swelling but no displacement (*see id.* (radiology report)). The day after the x-ray, Dr. Forrester provided a "half cast or splint," wrapped Plaintiff's hand in ace bandages, and provided pain medication (*id.* at 10). Plaintiff received another x-ray on March 25, 2021, which showed a "subtle" and "stable" fracture of the same finger with associated soft tissue swelling (*see id.* at 18 (radiology report)).

Thereafter, the FDOC's Central Office responded to Plaintiff's second appeal, stating:

> It is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing.
>
> Records reviewed indicate that you were seen by the Clinician on 02/05/2021, where you could address your medical concerns at that time.
>
> Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

(ECF No. 19 at 28 (response to Central Office appeal No. 21-6-01875)).

Plaintiff alleges Defendant Centurion of Florida, LLC, has a policy of requiring inmates to file three sick call requests in order to receive medical treatment (ECF No. 19 at 10–11). Plaintiff alleges this policy caused a delay in medical treatment, during which he suffered great pain (*id.* at 11).

Plaintiff alleges he suffered unbearable pain during the four-month delay in medical treatment (ECF No. 19 at 10). He asserts his right hand is disfigured and "cannot move properly," and he continues to experience chronic pain and cramping (*id.*). Plaintiff alleges he also suffers from mental and emotional disorders, including increased anxiety and panic attacks, due to the four months of pain and suffering he experienced (*id.* at 12).

Plaintiff claims that Defendants Burleson and Holland used excessive force against him, in violation of the Eighth Amendment (ECF No. 19 at 11–12). He claims that all Defendants were deliberately indifferent to his need for medical

treatment, in violation of the Eighth Amendment (*id.*).  Plaintiff seeks compensatory and punitive damages (*id.* at 12–13).  He also seeks unspecified injunctive and declaratory relief (*id.* at 12).

II.    APPLICABLE LEGAL STANDARDS

    A.    **Statutory Screening Standard**

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation marks and citation omitted).  And "bare assertions" that

"amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation marks and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

### B.   Eighth Amendment Standard Applicable to Medical Claims

The Eighth Amendment forbids the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend. VIII. Because the Cruel and Unusual Punishments Clause prohibits "the unnecessary and wanton infliction of pain," it also prohibits "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976) (quotation omitted). "Federal and state governments therefore have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991).

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry."

*Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). To meet the first prong, the plaintiff must demonstrate an "objectively serious medical need"—i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," and, in either instance, "one that, if left unattended, poses a substantial risk of serious harm." *Id.* (alteration adopted) (quotations omitted). To satisfy the second, subjective prong, the plaintiff must prove that the prison officials "acted with deliberate indifference to [his serious medical] need." *Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (quotation omitted). The deliberate-indifference standard is akin to "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994); *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020). "To establish deliberate indifference," a plaintiff must demonstrate that the prison officials "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Harper*, 592 F.3d at 1234. An inmate-plaintiff bears the burden to establish both prongs. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

III.   DISCUSSION

    **A.   Plaintiff has not stated a plausible Eighth Amendment claim against Officer Pulley, Health Services Administrator Rice, or Assistant Warden of Programs Ralph.**

### 1. Officer Pulley

Plaintiff asserts an Eighth Amendment claim of medical deliberate indifference against Officer Pulley based upon the fact that Plaintiff did not receive medical attention even though Pulley accompanied LPN Castro during her medication rounds in Plaintiff's dormitory on October 13 and 22, when Plaintiff told Pulley and Castro he required medical attention for his broken hand and submitted sick call requests. Plaintiff believes that Officer Pulley and/or LPN Castro discarded his first two sick call requests or otherwise failed to process them.

Generally, it is not deliberate indifference for administrative personnel to rely on information and direction provided by qualified medical professionals in carrying out their duties. Unless such an individual could have reasonably deduced that following such medical direction was tangibly wrong and would result in substantive harm to the inmate, the officer should not be subject to liability. *See Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1159 (11th Cir. 2010) (affirming verdict of no liability where plaintiff had not "presented evidence that her situation was so obviously dire that two lay deputies must have known that a medical professional had grossly misjudged [the prisoner's] condition").

It was entirely reasonable for Officer Pulley to rely upon LPN Castro to process Plaintiff's sick call requests or otherwise address Plaintiff's medical needs;

after all, LPN Castro was a member of the medical staff, and Officer Pulley was not. Plaintiff's allegations do not state a plausible Eighth Amendment claim against Officer Pulley; therefore, this claim should be dismissed.

### 2. HSA Rice

Plaintiff's deliberate indifference claim against HSA Rice is based upon Rice's response to Plaintiff's first informal grievance. Plaintiff filed the grievance on October 22, 2020, complaining he had submitted a sick call request to LPN Castro nine days earlier, on October 13, but he had not been seen by medical for "my hand injury and my toe nail that is falling off" (ECF No. 19 at 26 (informal grievance)). Plaintiff stated he was in "a lot of pain" and complained that he requested ibuprofen from dorm officers, but they refused to provide it (*id.*). Defendant Rice promptly responded to Plaintiff's grievance (i.e., the next day). Rice advised Plaintiff of the reason he was not seen by medical (a "security lockdown") and instructed him to resubmit a sick call request.

Plaintiff's description of his medical problems was not sufficient to place Rice on notice that he had a serious medical need or required medical intervention sooner than the sick call process could accommodate. Considering the information that Plaintiff provided in the grievance, HSA Rice's response was objectively

reasonable. Plaintiff's allegations do not state a plausible Eighth Amendment claim against HSA Rice; therefore, this claim should be dismissed.

### 3. Assistant Warden of Programs Ralph

Plaintiff's deliberate indifference claim against Assistant Warden of Programs Ralph is based solely upon Ralph's signing, and thus finalizing, Dr. Hernandez-Perez's two responses to Plaintiff's formal grievances complaining about lack of medical treatment. As discussed *supra*, Dr. Hernandez-Perez's first response was in December 2020, when Dr. Hernandez-Perez noted there was no record of sick call requests in Plaintiff's medical chart and advised Plaintiff that sick call was the proper procedure for obtaining a medical assessment to determine if further treatment or testing was needed. Dr. Hernandez-Perez's second response was in January 2021, when Dr. Hernandez-Perez reviewed Plaintiff's medical records and noted Plaintiff's last sick call request was on November 11, 2020, at which time Plaintiff was advised to obtain medication from the dorm officers and to follow up with sick call if necessary. Dr. Hernandez-Perez also noted there was no clinical indication of the need for a referral to a provider and instructed Plaintiff to follow policy and submit a sick call request if he needed medical attention.

A supervisory defendant is entitled to rely on the judgments of medical personnel. *See Williams v. Limestone Cnty., Ala.*, 198 F. App'x 893, 897 (11th Cir.

2006) (unpublished). A claim of medical indifference cannot generally be made against non-medical personnel unless they personally involved themselves with a denial of treatment or deliberately interfered with the medical treatment. *See Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990). Unless there is direct evidence to show that a warden or other supervisory official should not rely on such medical expertise, "it would be an unprecedented extension of the theory of supervisory liability to charge . . . wardens, not only with ensuring that [the inmate] received prompt and unfettered medical care, but also with ensuring that their subordinates employed proper medical procedures—procedures learned during several years of medical school, internships, and residencies." *Id.*; *see also Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1050 (11th Cir. 2014) (the law does not require that non-medical officials ignore the determination and recommendation of medical staff); *Townsend*, 601 F.3d at 1159 (correctional officers may rely on the judgment of medical professional unless evidence is presented that the officer must have known that the medical professional grossly misjudged the inmate's condition); *Dolihite v. Maughon ex rel. Videon*, 74 F.3d 1027, 1054–55 (11th Cir. 1996); *Acosta v. Watts*, 281 F. App'x 906, 908 (11th Cir. 2008) (finding no liability against prison administrator where administrator's decision-making was grounded in decision made by medical personnel).

Moreover, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. *Wayne v. Jarvis*, 197 F.3d 1098, 1106 (11th Cir. 1999); *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." *Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See Harris v. City of Marion*, 79 F.3d 56, 58–59 (7th Cir. 1996).

Here, Plaintiff's factual allegations do not plausibly suggest Assistant Warden of Programs Ralph's reliance upon Dr. Hernandez-Perez's medical expertise in responding to Plaintiff's formal grievances was unreasonable. Therefore, Plaintiff's claim against Assistant Warden of Programs Ralph should be dismissed.

**B.     Plaintiff's demand for declaratory and injunctive relief is moot.**

Plaintiff seeks declaratory and injunctive relief for the alleged Eighth Amendment violations (*see* ECF No. 19 at 12). As previously noted, Plaintiff was

released from the FDOC in August of 2021 (*see* ECF No. 12). Because Plaintiff is no longer confined, his request for declaratory relief is moot. *See Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) (inmate's release from prison mooted claim for declaratory and injunctive relief). Further, there appears no reason to believe that Plaintiff will again be confined in the FDOC under the same circumstances; therefore, the narrow exception for cases that are capable of repetition yet evading review does not apply. Plaintiff's demand for declaratory and injunctive relief should be dismissed as moot.

Accordingly, it is respectfully **RECOMMENDED** that:

1. Plaintiff's Eighth Amendment claims against Defendants Pulley, Rice, and Ralph be **DISMISSED with prejudice**, pursuant to 28 U.S.C. § 1915(e)(2)(B), for failure to state a claim upon which relief may be granted;

2. Plaintiff's demands for declaratory and injunctive relief be **DISMISSED as moot**;

3. This case be remanded for further proceedings on Plaintiff's Eighth Amendment claims against the remaining eight Defendants (Defendants Burleson, Holland, Castro, Bottoms, Pybus, Scott, Hernandez-Perez, and Centurion of Florida, LLC).

At Pensacola, Florida, this 4th day of January 2022.

Case No.: 3:21cv537/MCR/EMT

/*s/* *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**