# Exhibit G

```
 1                 UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF FLORIDA
 2                      PENSACOLA DIVISION

 3                      CASE NO. 3:21-cv-537-MCR-ZCB

 4  STEVEN DOUGLAS SHERMAN,
    DOC# L50862
 5        Plaintiff,

 6  vs.

 7  BURLESON, et al,

 8        Defendants.
    _____/
 9
                         DEPOSITION OF
10                  STEVEN DOUGLAS SHERMAN
                          VIA ZOOM
11
                 Taken on Behalf of DEFENDANTS
12
              DATE:          September 23, 2022
13            TIME:          11:00 a.m. - 12:05 p.m.

14        Examination of the witness taken before:

15                    JEFFREY R. BABCOCK
                        Court Reporter
16                For the Record Reporting, Inc.
                   1500 Mahan Drive - Suite 140
17                  Tallahassee, Florida 32308
```

```
 1  APPEARANCES OF COUNSEL:

 2  On behalf of the PLAINTIFF:
    (Appearing via Zoom)
 3  STEVEN DOUGLAS SHERMAN, pro se
    address on file
 4
    On behalf of the DEFENDANTS:
 5  (Appearing via Zoom)
    ERIK D. KVERNE, ESQUIRE
 6  Office of the Attorney General
    PL-01 The Capitol
 7  Tallahassee, Florida 32399-1050
    Office: 850-414-3654
 8  Email:  erik.kverne@myfloridalegal.com

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

INDEX TO WITNESS

STEVEN DOUGLAS SHERMAN                                    PAGE

Examination by MR. KVERNE                                    4

* * *

N O   E X H I B I T S

* * *

Certificate of Oath                                          54
Certificate of Reporter                                      55
Errata Sheet                                                 56
Read & Sign Letter to Witness                                57

* * *

D E P O S I T I O N

Whereupon,

STEVEN DOUGLAS SHERMAN

was called as a witness, having been first duly sworn to speak the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

THE WITNESS: Yes.

E X A M I N A T I O N

BY MR. KVERNE:

    Q.  Good morning, Mr. Sherman. My name is Erik Kverne, we briefly spoke on the phone a couple of times regarding this case. We'll talk about some of the issues -- outstanding issues related to the case itself after the court reporter's done. We don't necessarily need the court reporter to be on the record at that point. We can discuss them off the record without the court reporter necessary, okay?

    A.  Yes, sir.

    Q.  Okay. So as I said, I represent the Defendants Mr. Burleson and Mr. Pulley and Mr. Holland. The case number itself is Mr. Stephen Douglas Sherman versus Burleson and others. It's 3:21-CV-537-MCR/ZCB, and it's in the United States Northern District of Florida, and specifically in the Pensacola Division.

    All right. Mr. Sherman, could you please state your

```
 1  response to that?
 2      A.  I think he just kind of ignored me, put me in a
 3  cell, and then, you know, uncuffed me and walked away.
 4      Q.  Okay.  Did you have any further interaction with
 5  him for that day?
 6      A.  No, I did not.
 7      Q.  And you said pretty much you haven't really had
 8  any major interactions since; correct?
 9      A.  No.  After that, it was just, like -- not really.
10  I mean, I've asked Burleson multiple times for Ibuprofen,
11  Tylenol during the morning, and it seemed like him and his
12  sergeant were having -- were playing games.  They were
13  like, "Oh, okay.  Yeah.  Yeah, we'll get you some."  They
14  never brought me any.  You know, I must have asked --
15      Q.  Do you remember when those requests -- do you
16  remember when those requests were made?
17      A.  They were verbal requests for Ibuprofens and
18  Tylenols, you know, when he would do his rounds.
19      Q.  Do you remember when those requests were made by
20  any chance?
21      A.  Within, like, the first two weeks of after my
22  hand being injured.
23      Q.  Okay. Was it -- was he the only one that you
24  communicated those requests to, or did you communicate
25  those requests to anyone else?
```

1     A.   Yeah.  The -- to the sergeant also.  You know, it
2  was kind of like every shift that was there, you know, I
3  was asking for pain medications, Ibuprofen and Tylenol.
4  You know, the day -- the day shift wouldn't give me any, I
5  had to get it from the night shift.
6     Q.   Okay.  Do you remember who gave it to you
7  specifically on the night shift?
8     A.   Pulley was giving me the Ibuprofens, and some of
9  the other night time deputies -- or officers.
10    Q.   Okay.  So Pulley did give you Ibuprofen and other
11 pain medications?
12    A.   Yeah.  Well, every night Pulley would drop me off
13 Ibuprofens and Tylenols.
14    Q.   Let's talk about Pulley then -- well, actually,
15 hold on, before we go on and talk about Pulley.
16    As a result of the incident that happened, I guess,
17 with Holland and Burleson, what injuries did you suffer?
18    A.   What -- excuse me?
19    Q.   (inaudible) injuries did you suffer as a result
20 of the incident with Pulley and Burleson?
21    A.   With Pulley and -- well --
22    Q.   I'm sorry, not Pulley.  Sorry, Holland and
23 Burleson.  My mistake.
24    A.   Yeah, Holland -- okay, so like, the injuries that
25 I had was that they had broke the finger -- they broke my

```
 1  finger, and then I had stubbed my toe on the floor in the
 2  door, which eventually, like three months later the nail
 3  pulled off.  You know, it took me -- I ended up having to
 4  get it casted, the hand, because I believe it's the fourth
 5  metacarpal was fractured.
 6       Q.   Where in your hand was your hand broken?  Can you
 7  just lift your hand up and kind of show me?
 8       A.   Yeah.
 9       Q.   So it was broken right about here or so?
10       A.   Yeah, right here.  You can see how it's -- it's
11  not as crooked.  I can't even straighten it up, you know?
12  But it was from when he had taken the hand, pulled it back
13  so far that it kind of snapped -- it snapped right here.
14  It was, like, a clean snap.  I mean, he grabbed my hand
15  (non-verbal utterance) against the grate, snapped it back
16  here.  And then my hand was just like -- it was, like, a
17  boxing glove, you know, like a day -- two -- couple days
18  later.
19       Q.   And you showed -- you showed these injuries, I'm
20  assuming, to Pulley, and that's why he was giving you
21  medication?
22       A.   Yeah.  I mean, yeah, Pulley was -- he was giving
23  the medication, you know?  I did have a tooth ache also
24  while this was all going on.  My wisdom tooth in the back
25  was also having problems.  So on the top of the wisdom
```

```
 1       A.   I must have gotten in -- I must have finally
 2  gotten in the cell about 2:00.  They must have put him in
 3  about 4:00 -- 4:00 o'clock.
 4       Q.   Okay.  So a couple hours later?
 5       A.   Yes.
 6       Q.   Okay.  When are medication rounds, usually?
 7       A.   Medication rounds usually happen around 5:00
 8  o'clock.
 9       Q.   All right.  So Pulley and the nurse came to your
10  cell, they -- and you're saying they had to have come to
11  your cell because your roommate at the time had
12  psychiatric medications that he was required to take.  You
13  handed them a sick call request.  Did Pulley give you the
14  medication then, like, the aspirin or the Tylenol then?
15       A.   No, I didn't get no medications from them.  The
16  nurse -- the sick call nurse doesn't pass out Tylenols.
17  You know, Pulley only does medications at night.  You have
18  to put a note on your window that you want Ibuprofen, and
19  then at, like, count time, 11:00 o'clock is when he goes
20  around and passes out the medications.
21       Q.   Okay.  Was that --
22       A.   If you don't put a note on the door, he's not
23  going to give you anything.  You're going to --
24       Q.   Is that the time that he gave you the medication,
25  that night?
```

```
 1        A.   It wasn't that night, it was -- it must have
 2   been, like, the day after, you know, I started getting
 3   medications from him, Ibuprofens, Tylenols --
 4        Q.   So maybe starting on the 14th?
 5        A.   Starting on the 14th -- 13th, 14th.  I mean, I
 6   can't remember.  I know he was giving it to me, like,
 7   every day, I mean, but I can't say for certain "Yeah, he
 8   gave it to me on the 13th."  I can't --
 9        Q.   So when you would put that note on your door, he
10   would give it to you; is that safe to say?
11        A.   You put the note on the door, "Ibuprofen,
12   Tylenol," you know?  And then at 11:00 o'clock when he
13   came to do master roster is when he would give everybody
14   the Ibuprofens and the Tylenols.
15        Q.   Every time you put that note on your door, did he
16   give you Ibuprofen and Tylenol?
17        A.   He did.
18        Q.   Okay.  So there was -- it was not a time where
19   you put the note on the door and he didn't give you
20   Ibuprofen or Tylenol that you can remember?
21        A.   Just when he didn't work.  I mean, he was only
22   there five days a week so --
23        Q.   Yeah.  Of course, he's limited by the time
24   that --
25        A.   Yeah.
```

```
 1         Q.   -- he's in the institution; right?
 2         A.   So it would -- he -- I would -- it's safe to say
 3   that Pulley was the only person that was giving -- passing
 4   out medications back there.  No -- no other officer would
 5   give you Ibuprofen and Tylenols except for Pulley.
 6         Q.   Do you remember for how long he was giving you
 7   medications for?
 8         A.   I kind of -- I kind of was getting them every --
 9   every time he worked.
10         Q.   So is it safe to say that -- well, did you deal
11   with Pulley on a regular basis up until around February
12   when you actually got the X-ray?
13         A.   Pulley only worked in confinement.  I was -- I
14   was only back there -- I can't remember how long I was
15   back there.  It was no longer than, like, 30 days I was
16   back there in that confinement cell.
17         Q.   So pretty much from mid-October to maybe
18   mid-November he was giving you Ibuprofen and Tylenol on a
19   regular basis?
20         A.   Yes.  When he -- when he was there.  I mean, I
21   was suffering from -- you know, I had a broken hand; you
22   know, I'm filing sick calls; I have a wisdom tooth that
23   needed to be pulled out.  And I never did get a chance to
24   -- they never did pull the wisdom tooth out because I --
25   they were coming up with excuses because of COVID.  You
```

```
 1       A.   I let about -- I let anywhere between seven to
 2  ten days go by before I filed another sick call for
 3  medical treatment.
 4       Q.   During these seven to ten days, you're still in
 5  confinement; is that correct?
 6       A.   Still in confinement.
 7       Q.   And these seven to ten days, you -- you're still
 8  receiving, every time you're putting on the window to
 9  receive Ibuprofen and aspirin, Pulley's giving you
10  Ibuprofen and aspirin; right?  He's not denying you --
11       A.   He's giving -- yes.
12       Q.   So seven to ten days passes, you file -- you
13  submit another sick call?
14       A.   Filed another sick call.
15       Q.   Okay.  With sick call, did you hand it to Pulley
16  directly again?
17       A.   I gave it to Pulley, and then he gave it to the
18  nurse.
19       Q.   Okay.  So you saw him hand it to the nurse in
20  that instance?
21       A.   Yes.
22       Q.   Okay.  And then I'm assuming the two of them
23  finished their rounds and walked away; is that correct?
24       A.   Yes, sir.
25       Q.   Okay.  Did anything ever come from that sick call
```

```
                    CERTIFICATE OF OATH


STATE OF FLORIDA
COUNTY OF LEON


        I, JEFFREY BABCOCK, the undersigned authority,
certify that STEVEN DOUGLAS SHERMAN, personally appeared
before me and was duly sworn.


        WITNESS my hand and official seal this 9th day of
October, 2022.




                        _____
                          JEFFREY R. BABCOCK
                            Court Reporter
                     Notary Public, State of Florida
                       My Commission No. GG306943
                          Expires:  6/25/2023
```

```
 1                    CERTIFICATE OF REPORTER
 2

 3   STATE OF FLORIDA
 4   COUNTY OF LEON

 5

 6          I, JEFFREY BABCOCK, do hereby certify that I was
 7   authorized to and did stenographically report the
 8   deposition of STEVEN DOUGLAS SHERMAN; that a review of the
 9   transcript WAS requested; and that the foregoing
10   transcript, pages 1 through 53, is a true record of my
11   stenographic notes.
12          I FURTHER CERTIFY that I am not a relative,
13   employee, or attorney, or counsel of any of the parties,
14   nor am I a relative or employee of any of the parties'
15   attorney or counsel connected with the action, nor am I
16   financially interested in the action.
17
18          DATED this 9th day of October, 2022 at
19   Tallahassee, Leon County, Florida.
20                       *Jeffrey R. Babcock* (signature)
21                       _____
22                       JEFFREY R. BABCOCK
23                         Court Reporter
24
25
```

```
 1                      ERRATA SHEET

 2         DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES

 3  IN RE:  Corrections to the Deposition of STEVEN DOUGLAS
    SHERMAN, taken in the case of STEVEN DOUGLAS SHERMAN vs.
 4  BURLESON, et al, Case No. 3:21-cv-537-MCR/ZCB on September
    23, 2022.
 5

 6  Page-Line                      Correction

 7

 8

 9

10

11

12

13

14

15

16

17

18      Under penalties of perjury, I declare that I have read
    the foregoing document and that the facts stated in it are
19  true.  11/4/22
    _____  _____
20  DATE                            STEVEN DOUGLAS SHERMAN

21  CC:  ERIK KVERNE, ESQUIRE

22

23

24

25
```

```
 1  STEVEN DOUGLAS SHERMAN vs. BURLESON, et al

 2  IN RE:   DEPOSITION OF STEVEN DOUGLAS SHERMAN TAKEN
    September 23, 2022
 3  DATE SENT TO WITNESS:  October 10, 2022

 4  TO:      Steven Douglas Sherman
             c/o Erik D. Kverne, Esquire
 5           Office of the Attorney General
             PL-01 The Capitol
 6           Tallahassee, Florida 32399-1050

 7       The referenced transcript has been completed and
    awaits reading and signing.
 8       Please arrange to stop by our office at 1500 Mahan
    Drive, Suite 140, Tallahassee, Florida (OR ENTER OTHER
 9  ARRANGEMENT, IF ANY) to read and sign the transcript.
         Office hours are from 8:30 a.m. to 5:00 p.m., Monday
10  through Friday.  The transcript is 57 pages long, and you
    should allow yourself sufficient time.
11       If the reading and signing have not been completed
    prior to November 10, 2022, we shall conclude that you
12  have waived the reading and signing of the transcript.
         The original of this deposition has been forwarded to
13  the ordering party and your errata, once received, will be
    forwarded to all ordering parties as listed below.
14       Thank you.
                              [signature: Jeffrey R. Babcock]
15                            _____
                              Jeffrey Babcock, Court Reporter
16

17  CC:   ERIK KVERNE, ESQUIRE

18

19

20

21

22

23

24

25
```