UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STEVEN DOUGLAS SHERMAN,
    Plaintiff,

vs.                                Case No.: 3:21cv537/MCR/ZCB

LPN CASTRO, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff is a *pro se* prisoner who filed this civil rights action under 42 U.S.C. § 1983. Plaintiff alleges that Defendants Eddy Hernandez-Perez, M.D.; Carmen Castro, L.P.N.; Connie Pybus, L.P.N.; Amy Scott, H.S.A.; and Beverly Bottoms, H.S.A. acted with deliberate indifference to his medical needs in violation of the Eighth Amendment. (Doc. 19). Those Defendants have moved to dismiss, arguing that Plaintiff's fourth amended complaint fails to state a claim upon which relief can be granted. (Doc. 105). For the reasons below, the motion to dismiss should be denied.

1

## I.     Background[1]

Plaintiff is an inmate at Walton Correctional Institution. His fourth amended complaint initially named as Defendants correctional officers, medical personnel employed by Centurion of Florida,[2] and Centurion of Florida itself. (Doc. 19). Plaintiff has since dismissed his claims against the correctional officers. (*See* Docs. 111, 119). His claims against the medical personnel remain.

On October 12, 2020, Plaintiff was placed in a holding cell awaiting a cell assignment. (*Id.* at 7). An unidentified inmate in the neighboring holding cell exposed himself to a female officer and refused to obey the officer's orders to pull up his pants. (*Id.*). Officer Holland then approached Plaintiff's holding cell to move him to his new cell, and Plaintiff stated, repeatedly, "I'm not going in the cell with [the neighboring] inmate." (*Id.* at 7-8). Officer Holland placed Plaintiff in

---

[1] The following information is derived from the allegations found in Plaintiff's fourth amended complaint, which are treated as true for purposes of resolving Defendants' motion to dismiss. *See Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010) (stating that when "ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff").

[2] Centurion of Florida is a private company that has a contract with the Florida Department of Corrections to provide medical services to inmates. It is, however, subject to suit under § 1983 because it is performing a traditional governmental function. *Denham v. Corizon Health, Inc.*, 675 F. App'x 935, 940 (11th Cir. 2017) (explaining that when a private entity "performs a function traditionally within the exclusive prerogative of the state, such as contracting with the county to provide medical services to inmates . . . it becomes the functional equivalent of the municipality under section 1983").

handcuffs. (*Id.* at 7). Officer Holland then allegedly grabbed Plaintiff's right ring finger and pinkie finger and pulled them back with such force that Plaintiff's ring finger broke. (*Id.* at 8).

Plaintiff then informed Officers Burleson and Holland that his hand was injured and that he was experiencing pain. (*Id.*). As Officer Burleson uncuffed Plaintiff's hands, Officer Burleson pulled Plaintiff's right ring and pinkie fingers backwards and yanked on the handcuff, causing Plaintiff's arm to forcefully hit the cell door. (*Id.*). Neither officer reported nor facilitated medical treatment of Plaintiff's injuries. (*Id.*)

The following day, Plaintiff submitted a sick call request stating his hand was fractured and required emergency medical treatment. (*Id.*). Plaintiff did not receive medical attention. (*Id.*). Nine days later, on October 22, 2020, Plaintiff submitted a second sick call request, and again, Plaintiff did not receive medical attention. (*Id.*). Plaintiff also submitted a grievance stating he was in "a lot of pain," which was responded to with "[y]ou were unable to be seen due to security lockdown. You were instructed to resubmit sick call." (*Id.*). That same day, Plaintiff declared a medical emergency regarding his injured hand. (*Id.* at 9). A nurse came to Plaintiff's cell, gave him "12 Ibuprofen," and told him someone would see him soon. (*Id.*).

Ten days later, Plaintiff submitted a third sick call request and second grievance about the lack of medical treatment. (*Id.* at 9-11, 25). The grievance

3

response instructed Plaintiff to submit a sick call request. (*Id.* at 9, 25). It appears Defendant Nurse Pybus responded to Plaintiff's third sick call request. And it is alleged that despite Plaintiff's right hand being swollen, bruised, and "yellowing," Defendant Nurse Pybus neither examined Plaintiff's injuries nor referred him to a clinician for diagnosis and treatment. (*Id.* at 9, 11). Plaintiff then continued to unsuccessfully file grievances about the lack of medical treatment for his hand. (*Id.* at 9, 22, 31-32). Plaintiff appealed the denial of his formal grievances to the FDOC's Central Office. (*See Id.* at 21, 23, 28-29). The response to Plaintiff's first appeal was dated February 15, 2021, and stated:

> It is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing. Records reviewed indicate that you were seen by medical on 11/11/2020, where you could address your medical concerns at that time. To date, you have not accessed sick call to have your medical issues addressed. In accordance with Policy[,] inmates who present to sick call three (3) times with the same complaint as unresolved will be referred to a clinician but may be referred prior to that as determined by the assessor. Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

(*Id.* at 21).

Plaintiff was eventually transferred to the Walton Work Camp. While there, he was "finally" seen by a physician—Dr. K. Forrester. (*Id.*). Although the purpose of the visit with Dr. Forrester was skin-related, Plaintiff mentioned the issues with his hand to Dr. Forrester. (*Id.*). Dr. Forrester ordered an x-ray, which was taken on February 11, 2021. (*Id.*). The x-ray showed that Plaintiff did, in fact, have a broken

4

finger and associated soft tissue swelling. (*Id.*). Dr. Forrester treated the broken finger with a cast/splint, pain medication, and an Ace bandage. (*Id.* at 10).

Plaintiff alleges Defendants Castro, Pybus, Bottoms, Scott, and Hernandez-Perez were deliberately indifferent to his medical needs, in violation of the Eighth Amendment. (*Id.*). As relief, Plaintiff seeks compensatory and punitive damages. (*Id.* at 12-13).

## II.  Discussion

### A. Motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a complaint's allegations are taken as true and construed in the light most favorable to the plaintiff. *Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). A complaint does not need detailed allegations to survive a motion to dismiss, but it

5

does need "more than unadorned, the-defendant-unlawfully-harmed-me" accusations. *Id*.

Although they remain subject to the Federal Rules of Civil Procedure, pleadings filed by *pro se* litigants are to be liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). Similarly, a *pro se* complaint "must be held to less stringent standards than [a] formal pleading[] drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (reversing a district court decision that dismissed a *pro se* prisoner's deliberate indifference claims against prison medical personnel).

### B. Eighth Amendment deliberate indifference standard

The Eighth Amendment forbids the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has held that it is "cruel and unusual punishment" for prison officials to act with "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). That means prison officials are obligated to provide prisoners with "minimally adequate medical care." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). Minimally adequate medical care is not "perfect, the best obtainable, or even very good." *Id.* at 1510 (cleaned up). The deliberate indifference standard is met only if medical care is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* at 1505-06 (cleaned up).

6

To prevail on a deliberate indifference claim, a plaintiff must first show an "objectively serious medical need." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (cleaned up). A medical need is objectively serious if it "has been diagnosed by a physician as mandating treatment" or one that obviously warrants a physician's attention and "poses a substantial risk of serious harm" if left unattended. *Id.* (cleaned up). Second, a plaintiff must prove that prison officials (1) had "subjective knowledge of a risk of serious harm," (2) "they disregarded that risk," and (3) did so in a manner that "was more than mere negligence." *Id.* (cleaned up). Deliberate indifference can include delays in treatment, "though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

### C. Plaintiff's deliberate indifference claim against Defendants Hernandez-Perez, Castro, Pybus, Scott, and Bottoms

Defendants Hernandez-Perez, Castro, Pybus, Scott, and Bottoms have moved to dismiss Plaintiff's fourth amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 105).[3] According to the motion,

---

[3] Defendants also move to dismiss Plaintiff's complaint for a failure to comply with statutory pre-suit notice requirements for medical malpractice and medical negligence actions. Because Plaintiff's operative complaint does not raise, nor reasonably appears to raise, a medical malpractice claim, there is no basis for dismissal on that ground. (*See* Doc. 19 at 13).

7

Plaintiff's "fractured finger" is not an objectively serious medical need because Defendants claim "broken or bleeding fingers do not constitute serious injuries for purposes of a deliberate indifference claim." (*Id.* at 5-7).

Defendants further contend that none of them had "any subjective knowledge of any risk of serious harm" because they were not "present during the alleged altercation resulting in Plaintiff's injury." (*Id.* at 8). Defendant Castro appears to have received Plaintiff's sick call requests but did not see or medically evaluate Plaintiff "due to a security lockdown at the prison" and not due to "any deliberate indifference to Plaintiff's request for medical care." (*Id.*). Defendants Hernandez-Perez, Scott, and Bottoms "neither examined [n]or treated Plaintiff" because "Plaintiff failed to adhere to the administrative sick call process." (*Id.*). Accordingly, these Defendants contend they "were not aware of any risk of serious injury should Plaintiff's grievances be denied." (*Id.*). Further, Defendant Pybus contends that while her treatment of Plaintiff could be deemed negligent, it resulted in a mere "difference in medical opinion" and thus could not constitute deliberate indifference. (*Id.* at 9-10).

Finally, with respect to causation, Defendants summarily contend that none of their actions resulted in Plaintiff's initial injuries, and "Plaintiff is unable to allege any injury stemming from any direct actions of [the medical] Defendants." (*Id.* at 10-11). Defendants assert that because Plaintiff did not submit any "sick call

8

requests for treatment after his November 11, 2020 interaction with Nurse Pybus[,]" Defendants could not have caused Plaintiff's injuries. (*Id.*).

Defendants' arguments are unpersuasive. Accepting Plaintiff's allegations as true and liberally construing his complaint as the Court must at this stage, Plaintiff has sufficiently alleged a serious medical need as required for a deliberate indifference claim. Plaintiff claims to have suffered a fractured bone, which is something that requires medical treatment and is sufficient to plausibly allege a serious medical need. *See Hicks v. Jenne*, 213 F. App'x 800, 802 (11th Cir. 2007) (determining that a cheekbone fracture was a serious medical need); *Clark v. Sheffield*, 807 F. App'x 910, 915 (11th Cir. 2020) (holding that a knee fracture was a serious medical need); *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) (stating that a delay in providing treatment for a broken foot was "sufficient to state a constitutional claim").

Additionally, Plaintiff's fourth amended complaint plausibly alleges that he requested medical attention through the sick call procedure at least three times, filed various grievances, declared a medical emergency, and spoke with a nurse about his symptoms. (Doc. 19 at 8-10). At this stage, these statements are sufficient to plausibly allege subjective awareness of Plaintiff's serious medical need. *See Melton v. Abston*, 841 F.3d 1207, 1225 (11th Cir. 2016) (holding a plaintiff had sufficiently alleged the defendant had subjective knowledge when the inmate

9

repeatedly sought medical attention, made numerous requests for medical treatment, and was seen by a nurse). That Defendants were not "present" for the initial alleged use of excessive force does not indicate they had no subjective knowledge of Plaintiff's claimed medical need; rather, subjective knowledge is based on the risk of harm posed by Plaintiff's claimed medical need. *See*, *e.g., Gilmore v. Hodges*, 738 F.3d 266, 274 (11th Cir. 2013) (discussing the subjective knowledge requirement as referring to "the need for medical care").

Further, Defendants contend that their failure to initially treat Plaintiff was solely due to a security lockdown. At this stage in the case, however, Plaintiff's allegation that he experienced a multiple month delay in care despite several requests for treatment is sufficient to plausibly allege conduct that rises above mere negligence. *See McElligott*, 182 F.3d at 1255 (determining that delaying treatment may constitute conduct that is more than mere negligence); *Clark*, 807 F. App'x at 915-16 ("[F]or some emergency injuries, such as broken bones, even a few hours delay in receiving treatment can constitute deliberate indifference."); *Harris v. Coweta Cnty.*, 21 F.3d 388, 394 (11th Cir. 1994) (holding that deliberate indifference may exist when treatment is delayed by "several weeks"); *McKeithen v. Jackson*, 606 F. App'x 937, 939 (11th Cir. 2015) (stating that "delaying medical treatment for non-medical reasons" is "more than mere negligence").

Finally, with respect to causation,[4] Defendants' contention that their actions did not directly "cause" Plaintiff's injury is misplaced. Here, Plaintiff's claim that he experienced additional pain and swelling as a result of waiting multiple months to receive treatment for his fractured hand sufficiently alleges the causation requirement for a deliberate indifference claim. *See, e.g., Balbin v. Concepcion*, No. 18-CIV-20875, 2018 WL 11408758, at *9 (S.D. Fla. July 10, 2018) (finding that allegations of additional pain and discomfort due to a delay in treatment were sufficient to plausibly allege causation for purposes of deliberate indifference claim). Defendants' contention that because Plaintiff did not file sick call requests after Defendant Pybus interacted with Plaintiff on November 11, 2020, the Defendants did not cause Plaintiff any injury is also misplaced because, at that point, Plaintiff alleges the sick call process had become "unavailable." (Doc. 19 at 11). At this stage, Plaintiff's allegations (when liberally construed and accepted as true) that the medical Defendants failed to appropriately treat him—despite their subjective knowledge of his injuries—are sufficient to plausibly allege deliberate indifference in violation of the Eighth Amendment. This case should be permitted to proceed to

---

[4] While the Court's discussion of the Eighth Amendment above does not include an express causation element, courts have recognized the legal standard can also be articulated as "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) *causation* between that indifference and the plaintiff's injury." *Wilson v. Smith*, 567 F. App'x 676, 677 (11th Cir. 2014) (emphasis added).

the summary judgment stage where the Court can consider the viability of Plaintiff's claims on a more fully developed record.

## III. Conclusion

Accordingly, it is respectfully **RECOMMENDED** that the motion to dismiss filed by Defendants Hernandez-Perez, Castro, Pybus, Scott, and Bottoms (Doc. 105) be **DENIED**.

At Pensacola, Florida this 5th day of April 2023.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**