UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STEVEN DOUGLAS SHERMAN,
          Plaintiff,

vs.                                        Case No.: 3:21cv537/MCR/ZCB

LPN CASTRO, et al.,
          Defendants.
_____/

## **REPORT AND RECOMMENDATION**

This is a *pro se* prisoner civil rights case filed under 42 U.S.C. §
1983. The Defendants are Centurion of Florida[1]; Eddy Hernandez-Perez,
M.D.; Carmen Castro, L.P.N.; Connie Pybus, L.P.N.; and Amy Scott,
H.S.A. Plaintiff alleges Defendants were deliberately indifferent to his
serious medical needs in violation of the Eighth Amendment. (Doc. 19).
Defendants have moved for summary judgment (Doc. 124), which
Plaintiff has opposed (Doc. 127). For the reasons below, the motion for
summary judgment should be granted.

---

[1] Although Centurion of Florida is a private company, it is subject to suit
under § 1983 because it performs the traditional governmental function
of providing inmate medical care. *Denham v. Corizon Health, Inc.*, 675
F. App'x 935, 940 (11th Cir. 2017).

1

# I.    Background

## A. Plaintiff's version of events

Plaintiff claims that on October 12, 2020, an officer at Walton Correctional Institution (WCI) grabbed the fingers on his right hand and pulled them back with enough force to cause a broken bone.[2] (Doc. 19 at 7-8).  Plaintiff further alleges that later the same day, another officer pulled on the same fingers and hit Plaintiff's arm against a door.  (*Id.* at 8).  Plaintiff claims to have also injured his big toenail during the incident.  (*Id.*).

The following day, October 13, 2020, Plaintiff submitted a sick call request to Defendant Nurse Castro.  (*Id.*).  Plaintiff claims that when requesting the sick call, he stated that his hand was broken and his toe was injured.  (*Id.*).  Plaintiff says his October 13, 2020 sick call request did not result in medical treatment.  (*Id.*).

Nine days later, on October 22, 2020, Plaintiff claims to have submitted another sick call request.  (*Id.*).  In that sick call request,

---

[2] In addition to the current Defendants, Plaintiff originally sued three officers with the Florida Department of Corrections (FDOC) for excessive force.  The claims against those officers have been voluntarily dismissed. (Docs. 111, 119).

Plaintiff says he again sought treatment for his "broken hand or finger and injured toe." (*Id*.). Plaintiff claims that this second sick call request also went unanswered. (*Id*.).

Also on October 22, 2020, Plaintiff submitted a grievance regarding the lack of a response to his October 13, 2020 sick call request. (*Id*. at 8, 26). In that grievance, Plaintiff stated that he had submitted a sick call request on October 13, 2020, but was never seen and was still having pain in his hand and toe. (*Id*. at 26). That grievance was denied, and Plaintiff was told that he was not seen by medical staff on October 13, 2020 because of a security lockdown. (*Id*.).

On October 23, 2020, Plaintiff declared a medical emergency for his "very swollen and painful hand." (*Id*. at 9). A nurse responded, gave Plaintiff ibuprofen, and informed him that he would be seen by a treatment provider soon. (*Id*.). But Plaintiff claims he was not seen by a provider as promised. (*Id*.).

That led to Plaintiff submitting a third sick call request on November 3, 2020. (*Id*.). Following that request, Plaintiff was seen by Defendant Pybus. (*Id*.). During the visit, Plaintiff claims that Defendant Pybus refused to examine his injured toe. (*Id*.). Plaintiff also claims that

despite his hand being swollen and bruised, Defendant Pybus failed to refer him to a clinician or request x-rays. (*Id*. at 10).

Next, Plaintiff continued to unsuccessfully file grievances about the lack of medical treatment for his hand. (*Id*. at 9, 22, 31-32). Those grievances were denied by Defendants Scott and Bottoms. (*Id*. at 9, 25, 26). Plaintiff appealed the denial of his grievances. (*See id*. at 21, 23, 28-29). Those appeals were denied by Defendant Hernandez-Perez. (*Id*. at 9, 24).

Plaintiff was eventually transferred to Walton Work Camp. While there, he was seen in February of 2021 by Dr. K. Forrester. (*Id*.). Although the purpose of the visit with Dr. Forrester was skin-related, Plaintiff mentioned the pain in his hand. (*Id*.). That prompted Dr. Forrester to order an x-ray. (*Id*.). The x-ray showed a fracture of the fourth metacarpal bone in Plaintiff's hand. (*Id*. at 19). Dr. Forrester treated the fracture with a cast/splint, pain medication, and an Ace bandage. (*Id*. at 10).

In his fourth amended complaint, Plaintiff alleges Defendants were deliberately indifferent to a serious medical need, in violation of the

Eighth Amendment.  (*Id.*).  Plaintiff has sought compensatory and punitive damages as relief.  (*Id.* at 12-13).

## B. Defendants' version of events

Defendants contend that Plaintiff was not seen by medical staff regarding the October 13, 2020, sick call request because of a security lockdown.  (Doc. 124 at 3).  In response to Plaintiff's grievance about the lack of a medical visit after the October 13, 2020, request, Plaintiff was told to "resubmit sick call" if he still needed treatment.  (Doc. 124-2).

On October 22, 2020, Plaintiff submitted a sick call request.  But Defendants contend that sick call request involved a dental issue and not a hand injury.  (*Id.*).  In support of their contention, Defendants have provided Plaintiff's October 22, 2020 sick call request. (Doc. 124-3).  That request states, in its entirety:  "My wisdom tooth needs to be pulled im (sic) in a lot of pain my neck is swollen I need to be seen ASAP also need Amoxicillin (antibiotics) and Ibuprofen for the pain and inflammation." (*Id.*).  Plaintiff was subsequently evaluated by a dentist and prescribed an antibiotic for his tooth pain.  (*Id.* at 124-4).

Plaintiff filed a second grievance concerning his hand pain on November 3, 2020.  (Doc. 124-6).  Defendant Bottoms denied the

grievance and instructed Plaintiff to submit a sick call request if he needed treatment. (*Id.*).  Plaintiff then submitted a sick call request on November 6, 2020.

As a result of the November 6, 2020, sick call request, Plaintiff was seen by Defendant Pybus. (*Id.*).  Defendant Pybus evaluated Plaintiff's hand and instructed him to take ibuprofen as needed. (Doc. 124-8).  She further instructed Plaintiff to return to sick call if his condition worsened. (*Id.*).  According to Defendants, Plaintiff did not submit any additional sick call requests for hand pain in 2020.  He did, however, file another grievance on December 5, 2020.

In that grievance, Plaintiff complained about his hand pain. Defendant Scott denied the December 5, 2020 grievance and instructed Plaintiff to file a sick call request if he needed treatment.  Plaintiff appealed, and Defendant Hernandez-Perez denied the appeal. Defendant Hernandez-Perez noted that Plaintiff had not filed "any subsequent sick calls after his 11/11/20 consultation" with Defendant Pybus. (*Id.* at 6).

Once at Walton Work Camp, Plaintiff filed a sick call request about a skin issue.  He was seen for that issue on February 5, 2021. (*Id.*).

6

During the appointment, Plaintiff mentioned his hand pain and an x-ray was ordered. (*Id.*). That x-ray showed a fracture of the fourth metacarpal on Plaintiff's right hand. (*Id.* at 7). Plaintiff was placed in a splint for a period of six weeks. (*Id.*). At the end of six weeks, he had a second x-ray. (*Id.*). That x-ray still showed a fracture, so Plaintiff continued to wear the splint for another six weeks. (*Id.*). He had a third x-ray, which showed no fracture of abnormalities. (*Id.*). Plaintiff had a follow-up visit on May 24, 2021, during which he stated that "his hand was feeling better." (*Id.* at 8). Plaintiff had a fourth x-ray six weeks later, which showed a "healed fracture." (*Id.*).

## II.    Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* "If no reasonable jury could

return a verdict in favor of the nonmoving party," then "summary judgment will be granted." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

The central summary judgment question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. When answering that question, courts must view the evidence in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). And the nonmoving party bears the burden of coming forward with sufficient evidence on each element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A mere "scintilla" of evidence is insufficient to meet that burden. *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004).

**B. Deliberate Indifference Standard**

Plaintiff claims Defendants were deliberately indifferent to his serious medical needs. The Eighth Amendment forbids the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has held that it is "cruel and unusual punishment" for prison officials to act with "deliberate indifference to serious medical

8

needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). That means prison officials are obligated to provide prisoners with "minimally adequate medical care." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991).

To prevail on a deliberate indifference claim, a plaintiff must satisfy two prongs—one objective, one subjective. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Satisfying the objective prong requires a plaintiff to show an "objectively serious medical need." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (cleaned up). A medical need is objectively serious if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention—that, if left unattended, poses a substantial risk of serious harm." *Id.* (cleaned up). The subjective prong requires a showing that prison officials (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that was more than mere negligence. *Id.* The plaintiff's burden of establishing the objective and subjective prongs is "steep." *Id.*

## C. Plaintiff's deliberate indifference claim against Defendant Centurion

Plaintiff has claimed that Defendant Centurion acted with deliberate indifference. "Because Centurion is a private entity contracting with FDOC to provide medical services to inmates, it is treated as a municipality under § 1983." *Derks v. Bassa*, No. 22-13202, 2023 WL 5664197, at *2 (11th Cir. Sept. 1, 2023). As such, in order to prevail on a § 1983 claim against Centurion, a plaintiff must show that (1) his constitutional rights were violated; (2) Centurion had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *Estate of Hand v. Fla. Dep't of Corr.*, No. 21-11542, 2023 WL 119426, at *6 (11th Cir. Jan. 6, 2023) (stating that "§ 1983 liability against Centurion must be conditioned on the existence of an official policy or custom that constitutes deliberate indifference"). For § 1983 purposes, "[a] policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . . A custom is a practice that is so settled and permanent

that it takes on the force of law." *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999) (cleaned up).

In this case, Plaintiff claims that Centurion has a policy requiring an inmate to report to sick call three times with the same complaint before being referred to a clinician. Defendant Centurion has responded by providing a copy of the policy in question, which is FDOC Procedure 403.006. (Doc. 124-18 at 5). It states as follows: "Inmates who present to sick call three times with the same complaint as unresolved will be referred to a clinician but may be referred prior to that as determined by the assessor." (*Id.*). Defendant Centurion argues that Procedure 403.006 does not render it subject to liability under § 1983 for two reasons. First, Defendant Centurion claims that Procedure 403.006 is not its policy, but rather a FDOC policy. (Doc. 124 at 10-11). Second, Defendant Centurion argues that Plaintiff has misconstrued Procedure 403.006 as prohibiting an inmate from being seen by a clinician until the inmate has presented to sick call three times. According to Defendant Centurion, the policy explicitly allows an assessing nurse to refer an inmate to a clinician at any point.

The Court need not decide whether Defendant Centurion can be held responsible for an FDOC policy related to the provision of medical care. That is so because even if Procedure 403.006 is viewed as a policy of Defendant Centurion, Plaintiff is not entitled to relief. A close reading of Procedure 403.006 shows that the policy does not require three sick calls before an inmate can be referred to a clinician. The policy provides that an inmate may be referred to a clinician "prior to" the third sick call if the nurse believes it is warranted. It is, therefore, incorrect for Plaintiff to say that Defendant Centurion has a policy that forbids referral to a clinician until an inmate has reported to sick call three times. *See Wilson v. Corizon Health Inc.*, No. 4:17cv253, 2019 WL 4925369, at \*8 (N.D. Fla. July 9, 2019) (stating the policy "[b]y its own terms . . . allows the nurse . . . to refer inmates to clinicians regardless of whether an inmate has presented to sick call three times"). Because Defendant Centurion's "personnel could refer a prisoner sooner but were required to refer a prisoner if, as shown by a third sick-call request, the problem had not been resolved," no reasonable jury could find that the policy in Procedure 403.006 constituted deliberate indifference. *See Wilson v. Inch*, 4:17cv253, 2019 WL 3774616, at \*1 (N.D. Fla. Aug. 12, 2019) (granting

12

prison medical provider's motion for summary judgment on a deliberate

indifference claim and rejecting the argument that the provider's sick call

policy prohibited referrals to a clinician unless an inmate presented to

sick call three times).  Thus, Defendant Centurion is entitled to summary

judgment.

### D. Plaintiff's deliberate indifference claims against Defendants Castro, Pybus, Hernandez-Perez, Bottoms, and Scott

The Court will now turn to the summary judgment arguments

made by Defendants Castro, Pybus, Hernandez-Perez, Bottoms, and

Scott.  These Defendants seek summary judgment on the basis that (1)

Plaintiff did not suffer from a serious medical need (Doc. 124 at 13-15);

(2) and even if Plaintiff was suffering a serious medical need, the

Defendants were not deliberately indifferent to it.  (*Id*. at 15-19).  Those

arguments will be discussed below.

### 1. Serious medical need

As previously mentioned, a deliberate indifference claim requires a

prisoner to show that he had an "objectively serious medical need."

*Keohane*, 952 F.3d at 1266 (cleaned up).  A medical need is objectively

serious if it "has been diagnosed by a physician as mandating treatment

13

or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention—that, if left unattended, poses a substantial risk of serious harm." *Id.* (cleaned up).

Defendants contend Plaintiff "did not suffer from a serious medical need" because Plaintiff merely sustained "a right finger injury . . . that healed within six weeks." (Doc. 124 at 13). Plaintiff disagrees and argues that he experienced pain and swelling in his hand,[3] that he could not move it properly, and that he has experienced disfigurement. (Doc. 19 at 10). The medical evidence in the record shows that Plaintiff had an injury that was "diagnosed by a physician as mandating treatment." *Keohane*, 952 F.3d at 1266. More specifically, Plaintiff was diagnosed with a broken fourth metacarpal that required treatment in the form of a splint for 12 weeks (and a recommendation that the splint be worn for another 6 weeks, for a total of 18 weeks). Additionally, there is evidence

---

[3] It is unclear whether Plaintiff also asserts that his injured big toenail was a serious medical need. To the extent Plaintiff has made that assertion, it lacks merit. An injured toenail does not rise to the level of an objectively serious medical need. *See, e.g.*, *Taylor v. Fla. Dep't of Corr.*, No. 4:16cv491, 2017 WL 1362130, at *4 (N.D. Fla. Feb. 23, 2017) (finding that an injured toenail was not an objectively serious medical need).

14

in the record showing that Plaintiff repeatedly complained of pain caused by the injury.

When that evidence is viewed in the light most favorable to Plaintiff, a reasonable jury could find that Plaintiff's broken fourth metacarpal was an objectively serious medical need. The broken bone was diagnosed by a clinician, it required treatment in the form of a splint for many weeks, it necessitated several rounds of x-rays to ensure proper healing, Plaintiff repeatedly complained of pain caused by the injury, and he claims it has resulted in disfigurement. Precedent from the Eleventh Circuit and this Court supports the conclusion that this was a serious medical need.[4]  *See Lepper v. Nguyen*, 368 F. App'x 35, 37 (11th Cir. 2010)

---

[4] Defendants have cited several district court cases in support of their argument. (Doc. 124 at 13-14). The only cited case from within the Eleventh Circuit is *Kelly v. Jones*, No. 5:15-cv-0337, 2017 WL 2676422, at *4 (M.D. Ga. June 21, 2017). But that case is distinguishable from the current one. It appears that the inmate there, unlike the inmate here, was not actually diagnosed with a broken finger. *Id*. at *3. Moreover, the *Kelly* court's statement that "broken" fingers "do not constitute serious injuries," *id*. at *4, is hard to reconcile with *Lepper*, in which the Eleventh Circuit held that a dislocated finger "certainly qualifies as an objectively serious medical need." *Lepper*, 368 F. App'x at 37. Similarly, it seems in tension with another Eleventh Circuit opinion that referred to "broken bones" as "emergency needs" that required "immediate medical attention." *Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003); *see also Harris v. Coweta Cnty.*, 21 F.3d 388, 394 (11th Cir. 1994) (stating

15

(holding that a dislocated finger "certainly qualifies as an objectively serious medical need"); *see also Hayes v. Ong*, No. 4:16cv28, 2016 WL 6803136, at *3 (N.D. Fla. Oct. 12, 2016) (finding that an inmate's broken finger was an objectively serious medical need); *Minton v. Spann*, No. 5:05cv89, 2007 WL 1099114, at *16 (N.D. Fla. Apr. 10, 2007) (finding that a broken foot was an objectively serious medical need). Accordingly, Defendants are not entitled to summary judgment on this ground.[5]

## 2. Deliberate indifference

Defendants next argue that even if Plaintiff had a serious medical need, summary judgment is warranted because Plaintiff has not come forward with sufficient evidence from which a reasonable jury could

---

that "broken bones" are "emergency" medical needs). As for the other district court cases cited by Defendants, the Court finds them unpersuasive. All of the cases are from district courts in New York, which relied on Second Circuit precedent that defines a serious medical need as a condition that "may produce death, degeneration, or extreme pain." *Osacio v. Greene*, No. 08-cv-0018, 2009 WL 3698382, at *4 (N.D.N.Y. Nov. 2, 2009) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). That definition of a serious medical need is not the one applied in the Eleventh Circuit. *See Keohane*, 952 F.3d at 1266 (discussing the serious medical need standard).

[5] To be clear, the Court is not finding that as a matter of law, Plaintiff's broken fourth metacarpal was a serious medical need. Instead, what the Court is finding is that—given the record in this case—the issue cannot be resolved at the summary judgment stage.

conclude that Defendants acted with deliberate indifference.  Plaintiff disagrees, arguing that the evidence in the record of deliberate indifference is sufficient to survive summary judgment.

### a. Plaintiff's deliberate indifference claim against Defendants Hernandez-Perez, Bottoms, and Scott

The Court will first address Plaintiff's deliberate indifference claim against Defendants Hernandez-Perez, Bottoms, and Scott.  These Defendants were not personally involved in the treatment of Plaintiff's injured hand.  Rather, they were supervisory and administrative officials who reviewed and responded to Plaintiff's grievances.  (*See* Docs. 124-6, 124-10, 124-11).  And it is well-settled that "allegations of a defendant's involvement in the processing of a prison grievance regarding medical care specifically fails to demonstrate a defendant's personal involvement in the alleged constitutional misconduct of deliberate indifference to a medical need." *Gillis v. Smith*, No. 5:22-cv-00027, 2022 WL 1516311, at *8 (M.D. Ga. May 13, 2022) (rejecting the prisoner's deliberate indifference claim against administrative officials who processed the prisoner's grievance relating to his medical care); *see also Sluder v. Amatucci*, 4:18cv284, 2021 WL 2342879, at *9 (N.D. Fla. May 4, 2021) (granting summary judgment for a health services administrator on a

17

deliberate indifference claim because the administrator received and responded to the plaintiff's grievances but was not personally involved in the medical treatment); *Richards v. Hemphill*, No. 2:07-cv-762, 2009 WL 1651390, at *6 (M.D. Fla. June 12, 2009) (same).

Because Defendants Hernandez-Perez, Bottoms, and Scott were "[s]upervisory and administrative officials" who addressed Plaintiff's grievances but did not personally provide the medical treatment at issue, no reasonable jury could find that they were deliberately indifferent.[6] *Brennan v. Headley*, 807 F. App'x 927, 938 (11th Cir. 2020) (affirming

---

[6] Additionally, when Defendants Bottoms, Scott, and Hernandez-Perez responded to Plaintiff's grievances, they specifically instructed him to report to sick call if he needed treatment. (*See* Docs. 124-6, 124-10, 124-11). Such conduct does not constitute deliberate indifference. *See, e.g.*, *Milton v. Turner*, 445 F. App'x 159, 165 (11th Cir. 2011) (determining that a prison official was not deliberately indifferent for telling an inmate who complained of a medical issue to go to sick call); *Anciza v. Morales*, No. 4:09cv483, 2011 WL 2174135, at *5 (N.D. Fla. April 13, 2011) (rejecting a deliberate indifference claim against medical director who responded to the prisoner's grievance by instructing him to go to sick call); *Mountjoy v. Centurion of Fla.*, No. 3:20cv4685, 2021 WL 1216378, at *5 (N.D. Fla. March 11, 2021) (determining that an administrator was not deliberately indifferent by responding to a grievance with an instruction that the prisoner go to sick call); *Phillips v. Robbins*, No. 5:16-cv-01483, 2017 WL 5986207, at *15 (N.D. Ala. Oct. 27, 2017) (finding that an administrator's "instruction to file a sick call request instead of a grievance if he had a problem with his [medication] does not represent an act of deliberate indifference").

summary judgment in favor of a prison administrator who managed the plaintiff's grievances but was not personally involved in his medical treatment). Accordingly, Defendants Bottoms, Scott, and Hernandez-Perez are entitled to summary judgment on Plaintiff's deliberate indifference claim.

### b. Plaintiff's deliberate indifference claim against Defendant Castro

The Court now turns to Plaintiff's deliberate indifference claim against Defendant Castro. Plaintiff claims Defendant Castro (a nurse at WCI) was deliberately indifferent by failing to provide medical treatment in response to sick calls Plaintiff submitted on October 13, 2020 and October 22, 2020. (Doc. 124 at 17; Doc. 19 at 9). According to Plaintiff, Defendant Castro discarded the sick calls requests. Defendant Castro has responded by arguing that she did not discard Plaintiff's sick call requests. Rather, she contends that Plaintiff was not seen at sick call on October 13, 2020 because of a security lockdown. She further contends that Plaintiff's October 22, 2020, sick call request related to a dental problem, for which Plaintiff was treated.

In support of her position, Defendant Castro has submitted Plaintiff's medical records. One of those records is a "Chronological

19

Record of Health Care." (*See* Doc. 124-1). That record contains an entry from October 13, 2020, which states that medical staff members were "[u]nable to see [Plaintiff] due to lock down." (*Id.*). Additionally, a grievance response from October 23, 2020 informed Plaintiff that he was not seen on October 13, 2020 "due to security lockdown." (Doc. 124-2). With regard to Plaintiff's October 22, 2020 sick call request, Defendant Castro has provided the sick call request that Plaintiff submitted. (Doc. 124-3). That sick call request involves a complaint by Plaintiff about his "wisdom tooth." (*Id.*). The sick call request says nothing about an injured finger or hand. And the Chronological Record of Health contains a notation from October 23, 2020, indicating that Plaintiff was "assessed for dental pain" and instructed to follow-up with the dentist. (Doc. 124-1).

The medical records provided to the Court show there is no merit to Plaintiff's claim that Defendant Castro discarded his sick call requests on October 13, 2020 and October 22, 2020. Instead, the medical records show that both sick call requests were received. The records show Plaintiff was not seen at sick call for the October 13, 2020 request because of a security lockdown at the prison (not because Defendant Castro

discarded the request). And the records show that Plaintiff was seen on October 23, 2020 in response to his October 22, 2020 sick call request. But he did not receive treatment for his finger injury at that time because the sick call request said nothing about such an injury. Plaintiff's claim that Defendant Castro was deliberately indifferent because she discarded his sick call requests is "blatantly contradicted by the record," such that "no reasonable jury could believe it." *See Scott*, 550 U.S. at 380. Because Plaintiff's statements "do not create a question of fact in the face of contradictory, contemporaneously created medical records," *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010), Defendant Castro is entitled to summary judgment.

### c. Plaintiff's deliberate indifference claim against Defendant Pybus

Next up is Plaintiff's claim that Defendant Pybus was deliberately indifferent by failing to refer him to a clinician or request an x-ray on November 11, 2020. The medical records show that Defendant Pybus, a nurse at WCI, examined Plaintiff during sick call on November 11, 2020. (Doc. 124-8). According to the records, Defendant Pybus noted that Plaintiff complained of pain, numbness, stiffness, and difficulty bending his right ring finger. (*Id*. at 1). At the conclusion of the examination,

21

Defendant Pybus instructed Plaintiff to take ibuprofen and return if his condition worsened. (*Id*. at 2). Defendant Pybus did not refer Plaintiff to a clinician, nor did she request an x-ray.

Plaintiff claims that Defendant Pybus' failure to refer him to a clinician or request an x-ray was deliberate indifference. According to Plaintiff, his hand was bruised and showed signs of injury that were ignored by Defendant Pybus. (Doc. 19 at 10; Doc. 127 at 15). Defendant Pybus, on the other hand, argues she was not deliberately indifferent. Defendant Pybus asserts that this is a classic case of a medical treatment disagreement. She further asserts that Plaintiff has, at most, shown she was negligent, which is insufficient to establish deliberate indifference. The Court agrees with Defendant Pybus.

The Eighth Amendment deliberate indifference standard doesn't require a prisoner's medical care to be "perfect, the best obtainable, or even very good." *Harris*, 941 F.2d at 1510. "Medical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. (cleaned up). Medical malpractice or acts of negligence do not rise to the level of deliberate indifference. *Brown v.*

*McClure*, 849 F. App'x 837, 840-41 (11th Cir. 2021).  "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment."  *Id*. (cleaned up).  Generally, if a prisoner has "received some medical attention and the dispute is over the adequacy of the treatment," the courts are "reluctant" to find deliberate indifference.  *Id.*

Here, Plaintiff has failed to come forward with evidence from which a reasonable jury could conclude that Defendant Pybus' failure to refer him to a clinician or request an x-ray was "so grossly incompetent, inadequate, or excessive as to shock the conscience."  *See Harris*, 941 F.2d at 1510.  Defendant Pybus examined Plaintiff and determined, based on her medical judgment, that ibuprofen was indicated and neither a referral nor an x-ray were necessary.  Defendant Pybus instructed Plaintiff to return if his condition worsened.  There is no record of Plaintiff returning to see Defendant Pybus.

Whether Defendant Pybus "should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment."  *Harris v. Prison Health Servs.*, 706 F. App'x 945, 952 (11th Cir. 2017) (cleaned up).  And the U.S. Supreme

Court has explained that a "medical decision not to order an X-ray, or like measures, does represent cruel and unusual punishment." *See Estelle*, 429 U.S. at 107.

Although perhaps Defendant Pybus was negligent for failing to refer Plaintiff to a clinician or request an x-ray, negligence is a far cry from the type of conduct that violates the Eighth Amendment. Indeed, the Eleventh Circuit has consistently denied relief to prisoners in similar circumstances. *See Harris*, 706 F. App'x at 952 (finding no deliberate indifference where prison medical staff failed to order x-rays after the plaintiff suffered a head injury in a fall); *see also Phillips v. Robbins*, 752 F. App'x 759, 764 (11th Cir. 2018) (affirming summary judgment for prison nurse who "made a medical judgment call" that the prisoner's injury did not require a referral, an x-ray, or pain medication); *Hilton v. McHugh*, 178 F. App'x 866, 871 (11th Cir. 2006) (finding that the failure to refer a prisoner to a specialist was not deliberate indifference but rather "a disagreement over a course of treatment"). Because no reasonable jury could find that Defendant Pybus was deliberately indifferent to Plaintiff's serious medical need, she is entitled to summary judgment.

24

### III.   Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

    (1) Defendants' motion for summary judgment (Doc. 124) be

        **GRANTED**; and

    (2) The Clerk of Court be directed to enter judgment

        accordingly and close this case.

At Pensacola, Florida this 27th of October 2023.

        /s/ *Zachary C. Bolitho*
        Zachary C. Bolitho
        United States Magistrate Judge

### **Notice to the Parties**

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.